Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tao SUN<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief |

## INTRODUCTION

1. Petitioner Tao Sun is a native and citizen of the People's Republic of China who was inspected and admitted to the United States at Los Angeles, California, on or about January 16, 2020,

as a B-2 nonimmigrant visitor. He has been married to Jianhua Xian since August 28, 2000; together they have two children, and together they have owned their home at 2631 Steeplechase Lane, Diamond Bar, California 91765, since May 2020. From the day he arrived, Mr. Sun has done everything through the front door. United States Citizenship and Immigration Services ("USCIS") approved an extension of his authorized stay through July 15, 2021. While he was still in authorized status, on January 11, 2021, his wife filed an affirmative Application for Asylum and for Withholding of Removal (Form I-589) with the Los Angeles Asylum Office, on which he is a derivative. He has a Form I-485 application for adjustment of status pending, and USCIS issued him an Employment Authorization Document valid through October 15, 2030.

2. On October 1, 2026, Mr. Sun and his wife did exactly what the Government had told them to do: they reported to the USCIS Los Angeles Asylum Office at 14101 Myford Road, Tustin, California, at 6:30 a.m., for the asylum interview USCIS had scheduled. There, U.S. Immigration and Customs Enforcement ("ICE") officers seized him. The same day, DHS served him with a Notice to Appear listing his "residence" as the Adelanto detention facility. He is now civilly detained at the Adelanto ICE Processing Center.

3. Mr. Sun was at liberty. For nearly seven years he lived openly at an address he reported to the Government, pursued his applications, and appeared whenever he was summoned. Respondents allowed him to remain at liberty throughout that period; they made an affirmative decision not to detain him. They then seized that liberty with no advance notice of any kind and no hearing before a neutral decision-maker. They simply took him at the asylum interview he had come to attend.

4. The only conceivable justification for treating Mr. Sun as a person who must be jailed is a single misdemeanor matter in Orange County Superior Court in 2023, *People v. Tao Sun*,

No. 23HM02124. That matter is closed. Mr. Sun completed every term of his informal probation, including a batterer's treatment program; the stayed 45-day jail term was never imposed; and on April 29, 2026, the Superior Court terminated his probation early, found that "all misdemeanor probation terms have been met," set aside his plea, entered a plea of not guilty, and dismissed the case under California Penal Code § 1203.4. Exhibit 10. The Government was fully aware of that matter long before October 1, 2026: USCIS ran Mr. Sun's biometrics against FBI criminal records in May 2025, Exhibit 4, and then issued him a five-year work permit in October 2025, Exhibit 6. Nothing changed between then and the morning of his interview — except that he walked into a federal building because the Government asked him to.

5. Nor is Mr. Sun subject to mandatory detention. He was admitted after inspection, and the sole charge in his Notice to Appear is a simple nonimmigrant overstay under INA § 237(a)(1)(B). Exhibit 7. No criminal ground of removability is charged, and his single misdemeanor — with a 45-day term that was stayed and never served — falls within none of the categories of 8 U.S.C. § 1226(c). His detention is therefore discretionary and governed by 8 U.S.C. § 1226(a).

6. The Due Process Clause of the Fifth Amendment does not permit the Government to strip a person of his liberty first and supply process later. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). There was nothing quick or impracticable about Mr. Sun's case. Respondents knew exactly where he lived, because he owns his home and reported his address to USCIS; they knew exactly where he would be at 6:30 a.m. on October 1, 2026, because USCIS had scheduled the interview and mailed him notice of it on July 15, 2026. Exhibit 5. They had two and a half months to give him notice and a hearing. They chose not to.

7. The Notice to Appear itself confirms that no individualized assessment preceded the arrest. It recites that it "is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture" and that a "Section 235(b)(1) order was vacated" — although Mr. Sun was never placed in expedited removal, never received a credible fear interview, and is an affirmative asylum applicant who was admitted on a visa. It alleges that his authorized stay ended July 15, 2020 — although USCIS itself approved an extension of his stay through July 15, 2021. Exhibit 2; Exhibit 7. And it lists his residence as the detention center. These are the hallmarks of a form completed after the decision to detain had already been made.

8. Mr. Sun therefore does not ask this Court to order a bond hearing. He asks this Court to issue the writ and order his immediate release from custody, restoring the conditions of liberty that existed before his unlawful arrest on October 1, 2026.

**CUSTODY**

9. Mr. Sun is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301. He is therefore in the "'custody' of [the DHS] within the meaning of the habeas corpus statute." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

**JURISDICTION**

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause), U.S. Const. amends. IV and V, and 5 U.S.C. §§ 701–706 (Administrative Procedure Act). This Court also has habeas jurisdiction to review constitutional claims and questions of law concerning immigration detention. *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024).

## VENUE

11. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district and because a substantial part of the events giving rise to his claims — his arrest at the USCIS Los Angeles Asylum Office in Tustin, California — occurred within this district.

## REQUIREMENTS OF 28 U.S.C. § 2243

12. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

13. The Great Writ affords "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). The statute directs courts to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). And "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## EXHAUSTION

14. For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive the prudential exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

15. Waiver is warranted here. Mr. Sun's core claim — that he was seized without the pre-deprivation process the Constitution requires — is a constitutional question the immigration courts have no jurisdiction to adjudicate and no power to remedy. An Immigration Judge cannot order release as a remedy for the denial of pre-deprivation process, and a bond hearing held after the fact is precisely the post-deprivation proceeding the case law holds insufficient to cure the injury. *See Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026); *Zepeda Perez v. Santacruz*, 2026 WL 980492, at *5 (C.D. Cal. Apr. 9, 2026).

16. Administrative remedies are also inadequate and likely futile. The Notice to Appear recites that Mr. Sun's case arises from a vacated expedited-removal order under INA § 235(b)(1), Exhibit 7, inviting the position that he is an "applicant for admission" detained under 8 U.S.C. § 1225(b) — a class over which the Board of Immigration Appeals has held Immigration Judges lack bond jurisdiction. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). And the immigration court's own docket, as of October 9, 2026, shows "no future hearings" in his case. Exhibit 1. Each day spent seeking relief from a forum that may disclaim the power to grant it is a day of irreparable loss of liberty. *Perez v. Wolf*, 445 F. Supp. 3d 275, 285–86 (N.D. Cal. 2020); *W.T.M. v. Bondi*, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) ("[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals"). No statutory exhaustion requirement applies to Mr. Sun's constitutional claims. *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471 (1999).

**PARTIES**

17. Petitioner Tao Sun is a male native and citizen of the People's Republic of China, born July 10, 1975, A# 218-123-195. He was inspected and admitted to the United States at Los Angeles, California, on or about January 16, 2020, as a B-2 nonimmigrant visitor, and has resided here continuously since. He and his wife, Jianhua Xian, own and reside at 2631 Steeplechase Lane,

Diamond Bar, California 91765. He is a derivative on his wife's affirmative Form I-589 asylum application, receipt number ZLA2146481790, pending since January 11, 2021; he has a pending Form I-485, receipt number WAC2590123815; and he holds a valid Employment Authorization Document. *See* Exhibits 3, 4, 6, 8.

18. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center. In that capacity he is Mr. Sun's immediate custodian.

19. Respondent Jaime Rios is the Field Office Director for the Los Angeles Field Office, Enforcement and Removal Operations, ICE, and is named in his official capacity as a legal custodian of Mr. Sun.

20. Respondent Todd M. Lyons is the Acting Director of ICE and is named in his official capacity. ICE is responsible for the administration and enforcement of the immigration laws, including the detention and removal of noncitizens.

21. Respondent Markwayne MULLIN is the Secretary of the U.S. Department of Homeland Security and is named in his official capacity. DHS encompasses ICE and USCIS and is charged with administering and enforcing the INA. *See* 8 U.S.C. § 1103(a).

22. Respondent Todd BLANCHE is the Attorney General of the United States and is named in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## **FACTUAL ALLEGATIONS**

23. The following documents are attached to and incorporated by reference in this Petition: Exhibit 1 (EOIR Automated Case Information for A# 218-123-195, printed October 9, 2026); Exhibit 2 (USCIS Form I-797A approving extension of B-2 stay through July 15, 2021, receipt number WAC2115450326); Exhibit 3 (USCIS Form I-797 receipting Form I-589, receipt

number ZLA2146481790, received January 11, 2021); Exhibit 4 (USCIS Form I-797C for Mr. Sun's Form I-485, receipt number WAC2590123815, dated May 5, 2025); Exhibit 5 (USCIS asylum interview notice scheduling the interview for October 1, 2026, dated July 15, 2026); Exhibit 6 (Mr. Sun's Employment Authorization Document, category C09, valid October 16, 2025 through October 15, 2030); Exhibit 7 (Form I-862, Notice to Appear, dated October 1, 2026); Exhibit 8 (recorded Grant Deed to 2631 Steeplechase Lane, Diamond Bar, California, dated May 5, 2020); Exhibit 9 (notarized Marriage Certificate and children's notarial birth certificates, with English translations); and Exhibit 10 (Order for Dismissal and certified minute orders in *People v. Tao Sun*, No. 23HM02124 (Super. Ct. Orange Cnty.)).

**A. DHS's Campaign of Arrests of Noncitizens Pursuing Lawful Status.**

24. Since mid-2025, DHS has pursued an aggressive enforcement campaign targeting noncitizens who have pending applications for relief — including by arresting them at USCIS offices when they appear for scheduled interviews. This campaign prioritizes arrest numbers over any individualized assessment of danger or flight risk, and has swept up large numbers of people who have complied with every requirement the Government imposed on them.

25. As a result, individuals who pose no danger or flight risk are being detained precisely because they have made themselves known to the Government by pursuing lawful status — and are being seized at the very interviews the Government schedules to adjudicate their claims.

**B. Mr. Sun Entered Lawfully, Remained in Authorized Status, and Pursued Relief Through the Government.**

26. Mr. Sun was inspected and admitted to the United States at Los Angeles, California, on or about January 16, 2020, as a nonimmigrant visitor for pleasure. Exhibit 7 (Allegation 3). He did not let his status lapse. His wife filed a Form I-539 application to extend their stay, which USCIS received on January 12, 2021 and approved on June 7, 2021, authorizing Mr. Sun's B-2 stay

from January 16, 2021 through July 15, 2021 and issuing him an updated Form I-94, number 446001133 A2. Exhibit 2.

27. While Mr. Sun was in authorized status — and within one year of his arrival — his wife filed an affirmative Form I-589, Application for Asylum and for Withholding of Removal, with the USCIS Los Angeles Asylum Office in Tustin, California, which USCIS received on January 11, 2021, under receipt number ZLA2146481790. Exhibit 3. Mr. Sun is included on that application as a derivative spouse. USCIS's receipt notice told the family, in terms: “You may remain in the U.S. until your asylum application is decided.” *Id.* That application has been pending for more than five and a half years.

28. Mr. Sun also has a pending Form I-485, Application to Register Permanent Residence or Adjust Status, receipt number WAC2590123815. On May 5, 2025, USCIS notified him that it would reuse his previously captured biometrics and “run the same security checks” — including checks of the “criminal history records of the FBI” — to continue processing his application. Exhibit 4. On the basis of that pending application, USCIS then issued Mr. Sun an Employment Authorization Document in category C09, card number WAC2590123816, valid from October 16, 2025 through October 15, 2030. Exhibit 6. Every one of those filings was made in Mr. Sun's own name, from his own address, with counsel of record.

29. Mr. Sun and Jianhua Xian were married on August 28, 2000, in Zhenjiang, Jiangsu Province, China. They have two children: a daughter, Sun Yiheng, born April 19, 2006, and a son, Sun Ziyue, born September 14, 2011. Exhibit 9. On May 5, 2020, Mr. Sun and his wife took title, as husband and wife and joint tenants, to the residence at 2631 Steeplechase Lane, Diamond Bar, California 91765 (APN 8713-049-020), by Grant Deed recorded through Fidelity National Title.

Exhibit 8. That home — the same address USCIS has used on its notices to the family since 2021, Exhibits 2–3 — has been the family's residence ever since.

30. USCIS scheduled the family's asylum interview for Thursday, October 1, 2026, at 6:30 a.m., at the Los Angeles Asylum Office, 14101 Myford Road, Tustin, California 92780, by notice dated July 15, 2026. Exhibit 5. The notice warned that failure to appear could result in referral of the application to an Immigration Judge. *Id.* Mr. Sun and his wife appeared as directed.

**C. The Closed 2023 Misdemeanor Matter.**

31. Mr. Sun's only contact with the criminal justice system is a single misdemeanor case in the Orange County Superior Court, Harbor Justice Center, *People v. Tao Sun*, No. 23HM02124. On July 5, 2023, the court placed Mr. Sun on three years of informal probation as to count 2, imposed a 45-day jail term that it stayed pending completion of probation, and ordered him to complete a batterer's treatment program. Exhibit 10. No custodial term was ever served.

32. Mr. Sun complied with every term. On May 15, 2024, the court confirmed that he had completed the parenting component of his program; on August 16, 2024, proof of completion of the batterer's treatment program was filed. Exhibit 10. On February 19, 2026, he moved for early termination of probation and for relief under Penal Code § 1203.4. On April 29, 2026, with Mr. Sun present in court with counsel, the Superior Court (Hon. John S. Adams) granted the motion, ordered probation terminated, stayed the 45-day jail term permanently, noted that "all misdemeanor probation terms have been met and completed," and granted relief under Penal Code § 1203.4: Mr. Sun's guilty plea was "set aside, plea of NOT GUILTY ENTERED and CASE DISMISSED as to count(s) 2." *Id.*

33. Mr. Sun acknowledges that, for purposes of the immigration laws, a state expungement under Penal Code § 1203.4 does not by itself erase a conviction. *See Nunez-Reyes v.*

*Holder*, 646 F.3d 684, 690 (9th Cir. 2011) (en banc). But the closed matter is not charged as a ground of removability, does not trigger mandatory detention, and — as a court that supervised Mr. Sun for nearly three years has found — reflects full rehabilitation, not present danger.

34. The Government knew all of this before October 1, 2026. USCIS checked Mr. Sun's FBI criminal history in connection with his Form I-485 in May 2025, Exhibit 4, and issued him a five-year work permit in October 2025, Exhibit 6. ICE took no action against him at any point during the three years the criminal matter was open, or during the five months after it was dismissed.

**D. The October 1, 2026 Arrest at the Asylum Office.**

35. On October 1, 2026, when Mr. Sun appeared with his wife at the Los Angeles Asylum Office in Tustin for their scheduled asylum interview, ICE officers took him into custody. They transferred him to the Adelanto ICE Processing Center, where he has remained detained ever since.

36. Mr. Sun received no notice, written or oral, that his liberty was at risk. He was given no opportunity to be heard before he was taken into custody, no opportunity to present evidence that he is neither a danger nor a flight risk, and no decision by any neutral adjudicator before his detention. Respondents did not adjudicate, revoke, or terminate his pursuit of lawful status before detaining him; his asylum and adjustment applications remained pending on the day he was seized.

37. There was no emergency and no impracticability. Mr. Sun lived in a home he owns, at an address he had reported to USCIS, and USCIS had fixed the date, time, and place of his appearance two and a half months in advance. Exhibit 5. Respondents had every opportunity to provide notice and a hearing before depriving him of his liberty. They provided neither.

38. The same day, DHS issued and personally served a Form I-862, Notice to Appear, signed by a Supervisory Detention and Deportation Officer in Santa Ana, California, and served by

a Deportation Officer. Exhibit 7. The NTA alleges that Mr. Sun was admitted to the United States, checks the box "You have been admitted to the United States, but are removable," and charges him solely under INA § 237(a)(1)(B) with remaining longer than permitted. *Id.* No criminal ground of removability is charged.

39. The NTA bears multiple errors on its face. It alleges that Mr. Sun's authorization to remain expired on July 15, 2020 and that he "remained in the United States beyond July 15, 2020, without authorization" — but USCIS approved an extension of his stay through July 15, 2021. *Compare* Exhibit 7 (Allegations 3–4) *with* Exhibit 2. It states that it "is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture" and that a "Section 235(b)(1) order was vacated" — but Mr. Sun was never subject to expedited removal and never received a credible fear interview; he was admitted on a visa and is an affirmative asylum applicant. Exhibit 7; Exhibits 2–3. And it lists Mr. Sun's residence as "10250 Rancho Rd Adelanto, California" — the detention center — rather than the home he owns in Diamond Bar. Exhibit 7; Exhibit 8.

40. The NTA ordered Mr. Sun to appear before the Adelanto Immigration Court on October 29, 2026, at 9:00 a.m. Exhibit 7. The NTA was filed with the immigration court on October 2, 2026. *Id.* As of October 9, 2026, however, the immigration court's automated case information reflects a docket date of October 6, 2026 and states: "There are no future hearings for this case." Exhibit 1. No Immigration Judge has reviewed Mr. Sun's custody.

41. Upon information and belief, no Form I-286, Notice of Custody Determination, setting out any individualized finding that Mr. Sun is a danger or flight risk has been served on counsel or entered on the docket. DHS simply determined to detain Mr. Sun without bond. *See* 8 C.F.R. § 236.1(c)(8).

42. Since his detention, Mr. Sun has suffered significant emotional and physical hardship and is separated from his wife of twenty-six years, his children, his home, and his community. His detention also disrupts the very asylum adjudication the Government summoned him to attend. Every additional day of unlawful custody compounds an injury that no later hearing can undo.

## LEGAL ARGUMENT

### I. Mr. Sun Is Not Subject to Mandatory Detention; His Detention Is Discretionary Under 8 U.S.C. § 1226(a).

43. Because Mr. Sun was arrested inside the United States and is detained pending a decision on whether he may remain, his detention is governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention and expressly provides for release on bond or conditional parole. Section 1226 governs "the process of arresting and detaining" noncitizens "already in the country," *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018), and detention under § 1226(a) is permissive, not mandatory, and "always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.

44. Mr. Sun is not subject to mandatory detention under 8 U.S.C. § 1226(c). He is charged only with a nonimmigrant overstay under INA § 237(a)(1)(B), Exhibit 7, and not with any ground of inadmissibility or deportability enumerated in § 1226(c)(1). His single 2023 misdemeanor — on which a 45-day jail term was stayed and never imposed, and which has since been dismissed under Penal Code § 1203.4, Exhibit 10 — is not an aggravated felony, is not an offense for which he was "sentenced to a term of imprisonment of at least 1 year," 8 U.S.C. § 1226(c)(1)(C), and is not a controlled-substance, firearms, or terrorism offense. Nor does the mandatory-detention provision added by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), reach him: he was inspected and admitted on a valid visa, so the threshold inadmissibility predicate under INA § 212(a)(6)(A), (6)(C), or (7) is absent.

45. Nor can Respondents recast Mr. Sun as an "applicant for admission" subject to 8 U.S.C. § 1225(b). The NTA itself alleges that he "w[as] admitted to the United States at Los Angeles, CA," and charges him as an admitted nonimmigrant who overstayed. Exhibit 7. Whatever the reach of § 1225(b)(2)(A) as to noncitizens who entered without inspection, *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), it has no application to a person who was inspected and admitted. The NTA's boilerplate recital of a "credible fear" finding and a vacated "Section 235(b)(1) order" is simply false — Mr. Sun was never in expedited removal — and cannot convert a § 1226(a) detainee into a § 1225(b) detainee.

46. Because no statute compelled Mr. Sun's detention, Respondents' decision to seize him was a discretionary exercise of executive power over a person who was lawfully at liberty. It was therefore subject to the full requirements of the Due Process Clause, including the requirement of pre-deprivation process.

**<u>II. Mr. Sun Had a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before He Was Detained.</u>**

47. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

48. Mr. Sun was not a stranger at the border seeking entry. He had been admitted after inspection, had lived at liberty in this country for nearly seven years, owns his home, has been married for twenty-six years, and had applications for asylum and adjustment of status pending before USCIS — which had authorized him to work through 2030. Respondents permitted him to remain at liberty throughout that period. That Respondents never formally "released" him on bond makes no difference: the liberty interest attaches whenever the Government has allowed a

noncitizen to live at liberty while his immigration matters are pending. "[A]lthough the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026).

49. A noncitizen living at liberty in the United States has a due process interest in "an opportunity or a hearing *before* he is deprived of any significant protected interest." *R.A.N.O v. Wofford*, __ F. Supp. 3d __, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original). The rule that process must precede deprivation is the constitutional default. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan*, 455 U.S. at 436. This is not one of the "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation modified). Respondents provided Mr. Sun neither notice nor a hearing. They simply took him.

**III. The Closed 2023 Misdemeanor Supplied No Lawful Basis to Seize Mr. Sun Without Process.**

50. To the extent Respondents rely on the 2023 Orange County matter, it does not establish that Mr. Sun is a danger to the community or a flight risk, and it did not authorize Respondents to jail him without process.

51. The one neutral adjudicator that actually supervised Mr. Sun on that matter reached the opposite conclusion from Respondents. The Superior Court kept him at liberty throughout, never imposed the stayed jail term, confirmed his completion of the batterer's treatment program,

terminated his probation early, found that “all misdemeanor probation terms have been met and completed,” and dismissed the case. Exhibit 10. Respondents offer no reason why that court's individualized judgment, formed over nearly three years of supervision, should be displaced by a federal agency's unreviewed say-so.

52. Nor is the matter new. The Government had it in hand when USCIS checked Mr. Sun's FBI record in May 2025 and when it issued him a five-year work permit in October 2025. Exhibits 4, 6. Nothing about Mr. Sun's circumstances changed between then and October 1, 2026. What changed is only that he appeared, as directed, at a federal building. A detention decision triggered by compliance rather than by any new risk is the opposite of an individualized assessment of danger or flight.

**IV. Each Mathews Factor Confirms That Pre-Deprivation Process Was Constitutionally Required.**

53. To determine what process Mr. Sun was due, the Court weighs the three factors of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected, the risk of erroneous deprivation and the value of additional safeguards, and the Government's interest. Each favors Mr. Sun.

54. First, the private interest is at its zenith. Mr. Sun's interest in freedom from detention is “the most elemental of liberty interests.” *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). His liberty enables him to live with his wife in the home they own, to support his family, to prosecute his pending asylum and adjustment applications, and to “form the other enduring attachments of normal life.” *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

55. Second, the risk of erroneous deprivation is severe, and pre-deprivation safeguards would greatly reduce it. A unilateral ICE arrest decision — made by the enforcing agency itself, reviewed by no neutral adjudicator before the seizure, and documented on a charging form that

misstates Mr. Sun's procedural history, his period of authorized stay, and his residence — is precisely the kind of procedure that produces error. Exhibit 7. “A neutral judge is one of the most basic due process protections.” *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001); *see Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026).

56. Third, the Government's interest in detaining Mr. Sun without any prior process is low. The Government's only legitimate interests are preventing danger and ensuring appearance, *Zadvydas*, 533 U.S. at 690, and Mr. Sun presents neither concern: he entered lawfully, maintained and extended his status, owns his home, has been married for twenty-six years, has applications pending that give him every incentive to appear, holds valid work authorization, completed every term the criminal court imposed, and appeared for every obligation — including the 6:30 a.m. interview at which he was arrested. “[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'” *R.A.N.O.*, 2026 WL 40507, at *7. This case therefore “does not represent the special instance of the *Mathews* due process analysis where post-deprivation process is all that is due.” *Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

**<u>V. The Appropriate Remedy Is Immediate Release.</u>**

57. “[T]he traditional function of the writ is to secure release from illegal custody.” *Preiser*, 411 U.S. at 484. Where the Government detained a person who was lawfully at liberty without the pre-deprivation process the Constitution requires, “the appropriate remedy for the deprivation is release from custody.” *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19 (C.D. Cal. May 20, 2026).

58. A bond hearing now would not cure the violation. Courts have repeatedly held that “[a] post-detention bond hearing is insufficient to cure a violation of procedural due process arising

from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7; *accord Zepeda Perez*, 2026 WL 980492, at *5. Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A.T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

59. For that reason, courts have ordered immediate release even where the petitioner had already received a post-deprivation bond hearing and been denied bond. *See Singh*, 2026 WL 766228, at *10 (immediate release warranted notwithstanding a post-deprivation bond hearing that "failed to cure the injury of being detained"); *Mikayelyan*, *supra*. Mr. Sun, who has received no hearing of any kind, is entitled at least to the same relief. *See also Miri v. Bondi*, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026).

## **CLAIMS FOR RELIEF**

## **FIRST CLAIM FOR RELIEF**

**Violation of Procedural Due Process (Detention Without Pre-Deprivation Process) — U.S. Const. amend. V**

60. Mr. Sun re-alleges and incorporates by reference each preceding paragraph.

61. Mr. Sun had a protected liberty interest in remaining free from civil detention while lawfully at liberty and pursuing asylum and adjustment of status. Due process required that Respondents provide him notice and a hearing before a neutral adjudicator before depriving him of that liberty. No emergency or impracticability excused that requirement: Respondents knew his address and fixed the time and place of his appearance months in advance. Respondents provided no notice and no hearing of any kind, and thereby violated procedural due process. That violation was complete upon his detention and cannot be cured by any hearing offered after the fact. The Court should grant the writ and order Mr. Sun's immediate release.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Unlawful Detention in Violation of the Immigration and Nationality Act — 8 U.S.C. §§ 1225, 1226**

62. Mr. Sun re-alleges and incorporates by reference each preceding paragraph.

63. Mr. Sun was admitted to the United States and is charged only under INA § 237(a)(1)(B). He is not an applicant for admission subject to 8 U.S.C. § 1225(b), and he is not within any category of 8 U.S.C. § 1226(c). To the extent Respondents detain him under § 1225(b) or § 1226(c), or on the basis of the NTA's erroneous recital of a credible fear finding and a vacated § 235(b)(1) order, his detention is without statutory authority. Any authority to detain him arises, if at all, under § 1226(a), and Respondents exercised that discretionary authority without any individualized determination of danger or flight risk. The Court should declare that Mr. Sun's custody is governed exclusively by § 1226(a), grant the writ, and order his immediate release.

**<u>THIRD CLAIM FOR RELIEF</u>**

**Violation of Substantive Due Process — U.S. Const. amend. V**

64. Mr. Sun re-alleges and incorporates by reference each preceding paragraph.

65. Civil immigration detention must be tethered to a permissible purpose — preventing danger or ensuring appearance. *Zadvydas*, 533 U.S. at 690. Mr. Sun — a lawfully admitted noncitizen who extended his status, owns his home, has been married for twenty-six years, has asylum and adjustment applications pending, holds valid work authorization, completed every term of a single misdemeanor matter that has since been dismissed, and was arrested while appearing for his own asylum interview — is neither a danger nor a flight risk. His detention is not reasonably related to any permissible purpose, penalizes him for complying with the Government's directive to appear, and therefore violates substantive due process. The Court should grant the writ and order his immediate release.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner Tao Sun respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause directing Respondents to show cause within three (3) days why the writ should not be granted, 28 U.S.C. § 2243;

(3) Declare that Mr. Sun's detention, effected without notice and without a hearing before a neutral adjudicator prior to the deprivation of his liberty, is unlawful and violates the Due Process Clause of the Fifth Amendment;

(4) Declare that Mr. Sun's custody is governed by 8 U.S.C. § 1226(a), and that he is not subject to detention under 8 U.S.C. § 1225(b) or § 1226(c);

(5) Issue a writ of habeas corpus and ORDER Respondents to release Mr. Sun from custody immediately, subject to the conditions of liberty that existed prior to his arrest on October 1, 2026, and without imposing any new release restrictions, such as electronic monitoring;

(6) Enjoin Respondents from re-detaining Mr. Sun absent notice and a hearing before a neutral adjudicator at which the Government bears the burden of establishing, by clear and convincing evidence, that he is a danger or a flight risk;

(7) Enjoin Respondents from transferring Mr. Sun outside the Central District of California while this Petition is pending;

(8) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(9) Award reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such further relief as the Court deems just and proper.

Dated: October 10, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on October 10, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner