UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TAO SUN,

Petitioner,

v.

JAMES JANECHA, et al.,

Respondents.

Case No. 5:26-cv-05993-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Tao Sun ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 9), and Petitioner replied ("Reply" at Dkt. 10). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

The Petition is granted in part, and Respondents are directed to immediately release Petitioner from custody.

# II. FACTUAL AND PROCEDURAL HISTORY

## A. Entry into the U.S. and Asylum Application (2020-2026).

Petitioner is a citizen and national of China. (Pet. at 1, ¶ 1.) He and his wife were married in 2000 in China and have two children born in China in 2006 and 2011. (Pet. at 9, ¶ 29.) Petitioner and his wife entered the U.S. on or about January 16, 2020 on a B-2 visitor visa with authorization to remain through July 15, 2020. (Pet. at 8, ¶ 26; Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).) Petitioner and his wife purchased a home in Diamond Bar, California in May 2020. (Pet. at 9-10, ¶ 29; Pet. Ex. 8 / Dkt. 1-1 at 24 (deed to house).)

On July 2, 2020, Petitioner filed a Form I-539 application with USCIS to extend his stay; USCIS denied the application on July 3, 2021. (Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).) On January 12, 2021, his wife filed a Form I-539 application to extend their stay, which USCIS received and approved on June 7, 2021, authorizing Petitioner and his wife to remain in the U.S. through July 15, 2021. (Pet. at 8-9, ¶ 26; Pet. Ex. 2 / Dkt. 1-1 at 6 (USCIS notice).)

While Petitioner was in authorized status, and within one year of arrival, his wife filed an affirmative Form I-589, Application for Asylum and Withholding of Removal, with USCIS; Petitioner is included on that application as a derivative spouse. (Pet. at 9, ¶ 27; Pet. Ex. 3 / Dkt. 1-1 at 8 (USCIS notice acknowledging receipt of application).) That asylum application remains pending. (Pet. at 9, ¶ 27.) DHS records also indicate that on January 11, 2021, he "filed a Form I-589, Application for Asylum and for Withholding of Removal, with USCIS," and that "[t]he application remains pending." (Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).) DHS records also indicate that he has a Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records pending with USCIS. (Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).)

On October 16, 2025, USCIS authorized Petitioner to work in the U.S. through October 15, 2030. (Pet. at 9, ¶ 28; Pet. Ex. 6 / Dkt. 1-1 at 17 (work permit

card); see also Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213).)

**B. Misdemeanor Conviction (2023).**

On July 5, 2023, Petitioner was convicted in Orange County Superior Court of domestic battery under California Penal Code § 243(e)(1). (Pet. at 10, ¶ 31 (citing People v. Sun, case no. 23HM02124).) The state court sentenced Petitioner to 45 days in jail, but suspended the sentence pending completion of a 3-year term of probation; the court also ordered him to complete a batterer's treatment program. (Pet. at 10, ¶ 31; Pet. Ex. 10 / Dkt. 1-1 at 50 (minutes from state court).) Petitioner successfully completed probation, he did not serve any time, and the case was dismissed under California Penal Code § 1203.4. (Id. at 48; Pet. at 10, ¶ 32.)

This is Petitioner's "only contact with the criminal justice system." (Pet. at 10, ¶ 31; see also Answer Ex. A / Dkt. 9-1 at 4 (DHS Form I-213, criminal history section, listing no other arrests or convictions).)

**C. Detention by ICE (Oct. 1, 2026).**

On October 1, 2026, Petitioner and his wife appeared at a USCIS office for a scheduled asylum interview. (Pet. at 10, ¶ 30; id. at 11, ¶ 35; Pet. Ex. 5 / Dkt. 1-1 at 14 (notice of interview).) ICE officers detained Petitioner. (Pet. at 11, ¶ 35; Answer Ex. A / Dkt. 9-1 at 3 (DHS Form I-213).)

Petitioner was served with a Form I-862, Notice to Appear ("NTA"), charging him with removability under Immigration and Nationality Act ("INA") § 237(a)(1)(B). (Pet. at 11-12, ¶ 38; Pet. Ex. 7 / Dkt. 1-1 at 19 (the NTA).)[1]

The Petition alleges, upon information and belief, that Petitioner was not

---

[1] Petitioner alleges that the NTA "bears multiple errors on its face," including misstating the date Petitioner was authorized to remain in the U.S.; incorrectly stating that Petitioner was subject to expedited removal and had received a credible fear interview; and giving an incorrect home address for Petitioner. (Pet. at 12, ¶ 39.)

served with a Form I-286, Notice of Custody Determination. (Pet. at 12, ¶ 41.)

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 218-123-195 (China), last accessed Oct. 21, 2026). He currently has a master hearing scheduled in immigration court for November 5, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 218-123-195 (China), last accessed Oct. 21, 2026).

**D. Habeas Proceedings.**

Petitioner filed the present Petition on October 9, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Respondents violated Petitioner's procedural due process rights by not giving him a pre-deprivation bond hearing. (Pet. at 18, ¶ 61.)

Ground 2: Respondents violated the INA by detaining Petitioner under 8 U.S.C. § 1225(b), even though he is not subject to mandatory detention under that provision. (Pet. at 19, ¶ 63.)

Ground 3: Respondents violated Petitioner's substantive due process rights because his detention does not serve any permissible purpose, i.e., protecting the community from danger or mitigating flight risk. (Pet. at 19, ¶ 65.)

The Petitioner seeks Petitioner's immediate release from custody and an injunction preventing Respondents from re-detaining him without a pre-deprivation hearing at which DHS bears the burden of proof. (Pet. at 20.)

Respondents answered the Petition on October 15, 2026. (Dkt. 9.) They admit that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ["Bostock"]," but they argue "to the extent Petitioner has not yet requested such a bond hearing from the Immigration court, Petitioner has not yet properly exhausted his available administrative remedies…." (Id. at 2-3.) However, they argue Petitioner "is properly detained pending such potential bond proceedings because

this is Petitioner's first detention; he was not previously released from immigration detention or paroled." (Id. at 3.) They argue, "While Petitioner also seeks immediate release, to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Id.)

Petitioner replied on October 16, 2026. (Dkt. 10.) He argues, "The Government permitted [him] to live at liberty for nearly seven years," which gave rise to a protected liberty interest in release. (Id. at 2, 6.) He argues that a post-detention bond hearing is insufficient to cure the alleged violation of his due process rights, and that exhaustion is not required because the immigration courts cannot grant him relief on his due process claim. (Id. at 2, 6-8.) He "does not seek, and does not consent to, a bond hearing in lieu of release." (Id. at 3, 10.)

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 2 Because Respondents Concede He is Not Properly Detained Without Bond Under § 1225(b).

By conceding that Petitioner is entitled to request a bond hearing under the Ninth Circuit's decision in Bostock, Respondents have also conceded that he is not properly detained under § 1225(b). See generally Bostock, 183 F.4th at 1165 (holding that certain noncitizens who have resided in the country for some time are not subject to detention under § 1225(b)(2)(A)). Accordingly, the Court will grant Petitioner declaratory relief on this claim. To the extent this would entitle Petitioner to a bond hearing under § 1226(a), such relief is unnecessary because, as discussed below under Ground 1 of the Petition, Petitioner was entitled to a pre-deprivation bond hearing as a matter of due process.

### B. Petitioner is Entitled to Relief on Ground 1, Because Respondents Violated His Due Process Rights by Failing to Give Him a Pre-Deprivation Bond Hearing.

#### 1. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

#### 2. Analysis.

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who

face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

Respondents attempt to distinguish these cases on the grounds that Petitioner was never previously detained by ICE and released from custody. This is not the only situation in which courts have found that noncitizens have a protected liberty interest in release from custody, however. Courts generally reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added). For example, many courts have found this includes noncitizens who have overstayed their visa. See, e.g., Tello Vazquez v. Mullin, No. 26-cv-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed

significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community."). Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired. See, e.g., Huang v. Blanche, No. 2:26-cv-02157, 2026 WL 2271901, at *1, 8, 2026 U.S. Dist. LEXIS 178076 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until about 4 years later); Benipal v. Rokosky, No. 26-cv-01306, 2026 WL 1355010, at *1, 10, 2026 U.S. Dist. LEXIS 108085 (D. Ariz. Apr. 24, 2026) (finding noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa has expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the U.S., and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028, 2026 WL 788112, at *1, 2026 U.S. Dist. LEXIS 59347 (E.D. Cal. Mar. 20, 2026) ("[T]he petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status."); Kharitonova v. Albarran, No. 26-cv-01362, 2026 WL 531441, at *2, 2026 U.S. Dist. LEXIS 39213 (N.D. Cal. Feb. 25, 2026) ("Petitioner has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. … The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' … The government's insistence Petitioner lacks a liberty interest because it never before sought to detain

her is specious. … Although the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.”).

Here, Petitioner and his wife have a number of applications pending with USCIS. Petitioner was detained when he and his wife appeared at a USCIS office for an interview related to her asylum application, of which Petitioner says he is a derivative beneficiary. Moreover, Petitioner has been granted permission to work in the U.S. through 2030. This is evidence that immigration authorities have long been aware of Petitioner’s presence in the U.S. and made no move to detain him. This is sufficient to create the same kind of protected liberty interest in release.

Accordingly, the first Mathews factor supports Petitioner’s claim that he should have been given a pre-deprivation hearing.

b. The risk of an erroneous deprivation of such interest and the value of additional procedural safeguards.

“[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner’s detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community.” Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Here, Petitioner alleges that he was never served with any written notice explaining why he was being detained or proof that an ICE officer had made a determination that he was a flight risk or a danger to the community. Respondents have not disputed this allegation or produced any evidence to the contrary. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

Accordingly, the second Mathews factor also favors Petitioner.

c. The countervailing government interest.

There is no meaningful countervailing government interest that supports detaining long-time U.S. residents Petitioner—who have never been determined to be a flight risk or a danger to the community—without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release, not a post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026

U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### C. Ground 3 is Dismissed as Moot.

Ground 3 of the Petition alleges that Respondents violated Petitioner's substantive due process rights because his detention does not serve any permissible purpose, i.e., protecting the community from danger or mitigating flight risk. (Pet. at 19, ¶ 65.) Because Ground 3 seeks the same relief as Grounds 1 and 2, and the Court is granting relief on those grounds, the Court does not need to reach Ground 3. Accordingly, this claim will be dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 1 and 2 of the Petitioner are granted, and Ground 3 is dismissed as moot.
2. Respondents shall **immediately release** Tao Sun (A# 218-123-195) from custody.

3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

5. Petitioner is not subject to detention under 8 U.S.C. § 1225(b).[2]

DATED: October 22, 2026

Karen E. Scott
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[2] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).